# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JANICE M. DIETZ, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 2:11-CV-442-TLS |
| CAROLYN COLVIN, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Janice M. Dietz, is pursuing this Court's review of the Commissioner's final decision denying her application for disability insurance benefits and supplemental security income benefits. *See* 42 U.S.C. § 405(g). On December 6, 2011, this Court referred the matter to Magistrate Judge Andrew P. Rodovich to prepare a report and recommendation. After the submission of the parties' briefs, Magistrate Judge Rodovich filed a Report and Recommendation [ECF No. 21] on May 21, 2013, recommending that the decision of the Administrative Law Judge (ALJ) be affirmed. The Magistrate Judge reported that the ALJ's residual functional capacity (RFC) determination was supported by substantial evidence, finding no error in the ALJ's assessment of the weight afforded to the medical opinion of Dr. Corinne Kohler and to the Plaintiff's own statements regarding her limitations. Accordingly, the Magistrate Judge found that the ALJ's hypothetical to the vocational expert included all the limitations that were supported by the medical evidence in the record, as incorporated into the RFC.

On June 4, the Plaintiff filed her Objections to the Magistrate Judge Report and Recommendation [ECF No. 22]. The Plaintiff requests that the Court reject the Report and

Recommendation findings, sustain the Plaintiff's objections and grant her benefits outright or, alternatively, reverse and remand this case to the ALJ for further administrative proceedings. The Defendant did not respond to the Plaintiff's Objections.

Because the Plaintiff has objected to the Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**BACKGROUND**

Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008); 20 C.F.R. § 404.1520, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date, had severe physical impairments of attention deficit hyperactivity disorder, depression/bipolar disorder, anxiety, personality disorder, and degenerative disc and joint disease, that these severe impairments did not meet or medically equal a listed impairment, and that the Plaintiff maintained the residual functional capacity (RFC) to perform light and sedentary work, with restrictions. The ALJ concluded that the Plaintiff should not perform over the shoulder reaching due to left shoulder pain, and that she was limited to work that did not require detailed or complex job processes, little in the way of changes in the job process from day to day, and no interaction with the public. Her interaction with others was to be only occasional due to her moderate limitations in social functioning,

2

concentration, persistence, and pace brought about by her mental disorders. Although the Plaintiff was determined to be unable to perform her past relevant work as a teacher's aide and daycare worker, the ALJ concluded, based on the testimony of a vocational expert, that there were jobs in significant numbers in the national economy that the Plaintiff could perform with her limitations.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review.

## DISCUSSION

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). In determining whether substantial evidence exists, the district court must take into account both evidence in support of a conclusion and anything that fairly detracts from its weight. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 388–89 (7th Cir. 1992). A decision denying benefits need not address every piece of evidence, but the ALJ must provide "an accurate and logical bridge" between the evidence and her conclusion that a claimant is not disabled. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision

has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted). The court must review all the evidence in the record, and such review "must be more than an uncritical rubber stamp." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that she is not only unable to do her previous work but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the

fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

The Plaintiff challenges the ALJ's findings with respect to the determination of her RFC, which is the work the Plaintiff was still able do on a regular and continuing basis despite her physical impairments and limitations. *Craft*, 539 F.3d at 675–76. When assessing the work a person can perform despite her limitations, an ALJ looks at the relevant medical evidence, as well as statements from others or from the claimant regarding the limitations that result from pain and other symptoms. 20 C.F.R. § 404.1545. Here, in arriving at the Plaintiff's RFC, the ALJ did not give controlling weight to the opinions expressed by Dr. Corinne Kohler, specifically the severity of limitations related to concentration, persistence, and pace, or the opinion that the Plaintiff would miss work more than four days per month. (ALJ Decision 9, R. 64.) The ALJ also noted that the Plaintiff's "subjective statements regarding the level of her job related functional limitations are not supported with medical findings based on objective medical evidence or other corroborating evidence." (ALJ Decision 10, R. 65.) The ALJ stated that she was giving more weight to the Plaintiff's "actual functioning in her daily activities," and was crediting those complaints regarding her diminished "capacity for basic work activities to the extent they are reasonably consistent with the objective medical evidence and the other evidence of record." (*Id.*)

## A. Dr. Kohler's Opinion and Other Testimony Regarding the Plaintiff's Functional Limitations

An ALJ is tasked with evaluating opinion evidence when making a determination of disability. A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott*, 647 F.3d at 739. Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

The Plaintiff argues that the ALJ improperly discounted the opinion of the Plaintiff's treating physician, Dr. Kohler, who prepared a Mental Impairment Questionnaire on November 3, 2008. In this Questionnaire, Dr. Kohler noted the Plaintiff's medication regimen, including the side-effects of lethargy, drowsiness, and dizziness. Dr. Kohler noted the frequency of her contact with the Plaintiff, and the severity of the Plaintiff's mental impairments and symptoms. Specifically, she opined that the Plaintiff had the following pervasive symptoms: generalized persistent anxiety, difficulty thinking or concentrating, persistent disturbances of mood or affect, paranoid thinking or inappropriate suspiciousness, bipolar syndrome with manic and depressive

6

syndromes, hyperactivity, motor tension, emotional lability, pressures of speech, easy distractibility, sleep disturbance, and oddities of thought, perception, speech or behavior. Dr. Kohler assigned the Plaintiff a global assessment of functioning (GAF) score of 49. She indicated that the Plaintiff's symptoms and medication side effects would cause her to miss work more than four days per month. Dr. Kohler noted that the Plaintiff's degree of functional limitation for concentration, persistence, or pace was marked, but not extreme. She did not have restrictions in her activities of daily living, but had a moderate degree of limitations in maintaining social functioning. Dr. Kohler's RFC assessment, a separate document completed on the same date, noted that the Plaintiff would not be able to meet competitive standards for unskilled work because she could not sustain an ordinary routine without special supervision, and could not complete a normal workday and workweek without interruptions from psychologically based symptoms. She assigned a "seriously limited, but not precluded" rating to many other categories, which was defined to mean that the "ability to function in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial loss of ability to perform the work-related activity." (Ex. 17F, R. 375.) Dr. Kohler again opined that the Plaintiff would miss more than four days per month of work due to her impairments and treatment.

The ALJ cited multiple reasons for not giving Dr. Kohler's opinion controlling weight. First, the ALJ noted that the Plaintiff's treatment notes since 2007 noted only subjective complaints regarding the Plaintiff's rapid, excessive speech and interruptions of conversations along with anxiety around people and a belief that they were talking about her, but no findings based on objective observations. In support of this finding, the ALJ cited the following: office

7

treatment records dated April 5, 2007, to January 9, 2008, from Champaign County Christian Health Center (Ex. 1F); office treatment records dated February 12, 2008, from Frances Nelson Health Center (Ex. 3F); office treatment records dated March 3, 2008, to March 13, 2008, from Frances Nelson Health Center (Ex. 6F); office treatment records dated March 31, 2008, to April 28, 2008, from Frances Nelson Health Center (Ex. 7F); a Psychological Evaluation with Mental Status Examination completed by Dr. William Kohen on May 21, 2008 (Ex. 8F); the Mental RFC Assessment dated June 13, 2008, from Dr. Joseph Mehr (Ex. 13F); office treatment records dated May 20, 2008, to September 4, 2008, from Frances Nelson Health Center (Ex. 15F); the RFC-Mental dated November 3, 2008, from Dr. Kohler (Ex. 17F); the Mental Impairment Questionnaire prepared on November 3, 2008, by Dr. Kohler (Ex. 18F); and office treatment records dated June 4, 2008, to January 12, 2010, from Frances Nelson Health Center (Ex. 22F). Second, the ALJ stated that Dr. Kohler did not build an adequate bridge between her medical findings and any particular job-related limitations or her finding that the Plaintiff would miss work more than four days of work per month. The ALJ noted that none of the other treating sources indicated in their notes the level of limitations indicated by Dr. Kohler. The ALJ concluded that the Plaintiff's actual daily activities, her ability to perform past work, and her ability to relate to her fiancé did not support the degree of limitations cited by Dr. Kohler.

In consideration of the Plaintiff's request for disability benefits, the ALJ acknowledged that the Plaintiff suffers from several medically determinable mental impairments. These include ADHD, depression/bipolar disorder, anxiety, and personality disorder. The parties do not dispute this determination. When considering the weight to assign Dr. Kohler's opinion regarding the limitations brought about by these impairments, it was appropriate for the ALJ to examine the

8

totality of the Plaintiff's treatment records. *See, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (noting that an ALJ should analyze whether a mental-residual-functional-capacity questionnaire was consistent with the provider's treatment notes as a whole because a "person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition"). Upon review of the treatment notes, the ALJ concluded that these records showed that Dr. Kohler's opinion was not based on "objective" observation, but on the "repetition of the claimant's uncorroborated subjective statements." (ALJ Decision 9, R. 64.)

This Court has reviewed the treatment notes cited in the ALJ's decision. While some of these treatment notes basically record the Plaintiff's subjective complaints, many of these same documents contain an objective component. For example, the treatment notes dated February 12, 2008, from Frances Nelson Health Center include an objective category. In this section, the examiner noted that the Plaintiff was very anxious, spoke continually with rapid, run-on sentences, and that the timbre of her voice escalated. The Plaintiff's boyfriend, who accompanied the Plaintiff to the evaluation, explained that the Plaintiff spoke loudly and continuously and interrupted constantly. In a later assessment, the Plaintiff's speech was observed to be much more controlled. In a follow-up visit, the Plaintiff stated that medication was not helping and she was still hyper and anxious and could not hold a job due to her anxiety. In the objective observations it was noted that the Plaintiff was alert, oriented, and "fairly appropriate; however, she appears on the anxious side and is talking constantly." (Ex. 7F, R. 300.)

Dr. Joseph Mehr, who was a non-examining State agency reviewer, completed a mental

9

residual functional capacity form for the Plaintiff on June 13, 2008. He gave the Plaintiff moderate limitations for difficulty in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace. After conducting a face to face interview with the Plaintiff, Dr. Mehr noted that her only "observed difficulty was talking." (Ex. 12F, R. 348.) He noted in this document and his RFC assessment that she has pressured speech and appearance of anxiety, was active, and likely had difficulty relating to others due to their reaction to her rapid fire speech. He opined that this was not an "insurmountable hurdle" and that she retained the capacity "for generally socially appropriate behavior, in settings with reduced interpersonal contact." (Ex. 13F, R. 352.)

Treatment notes from May 20, 2008, to September 4, 2008, from Frances Nelson Health Center include objective observations regarding the Plaintiff's speech and anxiety. On May 20, 2008, the Plaintiff was observed to by "very hyper," not completing sentences, and somewhat tangential in her speech. The examiner noted that it was very difficult to get eye contact with the Plaintiff. (Ex. 15F, R. 368.) On July 30, 2008, the Plaintiff's speech was described as rapid, and somewhat tangential but improved over the last visit. She was able to focus and was somewhat improved on medication. On September 4, 2008, the Plaintiff's affect was still somewhat rapid, but improved since the last visit. Later, however, the Plaintiff presented as "odd-appearing" and with an "odd affect." (Ex. 22F, R. 414.) She had mismatched clothing, bright pink eye make-up, and disorganized, rambling speech. She continued to exhibit some of this same type of behavior during other appointments in 2009. (Ex. 22F.)

It is unclear what objective observations the ALJ believed were lacking, what diagnostic tools Dr. Kohler should have employed, or how subjective complaints regarding anxiety or the

effects of medication would have been corroborated. Perhaps the ALJ meant that the objective observations did not support the Plaintiff's subjective complaints, or did not support the severity of the restrictions Dr. Kohler cited. Discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). However, the ALJ did not pinpoint which restrictions were unsupported by the treatment notes. Additionally, the observations about the Plaintiff that were recorded in the treatment notes were not inconsistent with the recitation of her subjective complaints, and the ALJ does not provide good reasons for discounting these subjective complaints, especially as it relates to the Plaintiff's limitations due other her mental impairments.

The ALJ states that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (ALJ Decision 10, R. 65.) The ALJ reasons that the Plaintiff's subjective statements regarding the level of her job related functional limitations are not supported by medical findings based on objective medical evidence or other corroborating evidence, and that the ALJ was giving more weight to the Plaintiff's "actual functioning in her daily activities." (*Id.*) The activities at issue included the Plaintiff's ability to work in the past without establishing a significant diminution in her mental functioning since she last worked, perform volunteer work, travel back and forth to her ill parents' home to help them, and perform other "typical and usual functions." An ALJ may consider a claimant's daily activities when assessing credibility, but she must explain perceived inconsistencies between these activities and the claimed limitations. *See Stewart v. Astrue*, 561

11

F.3d 679, 684 (7th Cir. 2009); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Here, the ALJ did not specifically state how these activities were inconsistent with the limitations related to attention deficit, anxiety, hyperactivity, and bipolar syndrome, specifically with the limitations on concentration, persistence, or pace.

The typical and usual functions cited by the ALJ relate, presumably, to activities she performed inside the home. The ALJ does not explain how these minimal household chores are inconsistent with the Plaintiff's subjective complaints, which relate mostly to her interactions with other people outside the home. Additionally, the fact that she traveled to and from her parents' residence, and helped them, does not contradict the statements and observations regarding her excessive speech, interruption of conversations, or belief that others in the workplace were talking about her. The Plaintiff has not alleged that she has marked limitations in activities of daily living, and no medical source opined that the Plaintiff suffered marked restriction in activities of daily living. In addition, the ALJ's decision did not include an explanation concerning how the Plaintiff's credibility was impacted by the testimony of a third party regarding her symptoms and their impact on the Plaintiff. The ALJ noted that William Madden, whom the ALJ identified as the Plaintiff's friend and roommate, testified that the Plaintiff had no listening skills, had difficulty with comprehension, did not accept criticism well, had a poor memory, and was often teary. The ALJ stated that Madden's testimony was considered in determining the Plaintiff's mental job related limitations, but that "more weight is given to actual medical evidence and the claimant's actual activities of daily living." (ALJ Decision 11, R. 66.) It appears that the testimony from Madden that the ALJ did not give weight to related to the Plaintiff's lack of comprehension and listening skills, but the ALJ does not

12

specifically state which medical evidence and which activities of daily living contradicted Madden's testimony.

The Plaintiff's volunteer work may be an important factor in deciding what limitations to impose, but the ALJ's decision does not include any discussion of the extent of her volunteer work, or whether the expectations for the position were consistent with the expectations that occur in substantial gainful activity. *See Kangail v. Barnhart*, 454 F.3d 627, 629–30 (7th Cir. 2006) (explaining that a claimant who can hold a job only for a short period of time because of her impairment is not capable of substantial gainful activity). Without any evidence regarding the hours the Plaintiff volunteered, or whether the work was consistent or sporadic, there is also no evidence to suggest that the volunteer work schedule was inconsistent with Dr. Kohler's assessment that the Plaintiff would miss four days of work per month.

With regard to the Plaintiff's past jobs, the evidence in the record was that she was fired from all but one of these jobs. In light of the fact that the ALJ used the Plaintiff's past employment as evidence that was contrary to Dr. Kohler's opinion, the ALJ did not sufficiently discuss the consequences of the past employment and the circumstances under which the Plaintiff left that employment. The only job the ALJ's decision specifically mentions is the Plaintiff's last job; the ALJ states that the Plaintiff presented no "supporting evidence of her statement that her employer told her she would have been fired if she had not quit to move," or that she "failed to perform [her] work satisfactorily." (ALJ Decision 12, R. 67.) The Plaintiff testified about her troubles in the job and the fact that she was told she would have been fired. The ALJ does not indicate why this testimony is not credible. Moreover, even the ALJ concluded that the Plaintiff was no longer able to perform this past work.

The ALJ also reasoned that the Plaintiff's other treating sources did not indicate in their treatment notes that the Plaintiff had the level of limitation indicated by Dr. Kohler's opinion. The treatment notes the ALJ listed that were related to her mental condition were a November 17, 2009, mental health counseling follow-up at Frances Health Center, wherein Dr. Derum observed that the Plaintiff spoke in a loud, rapid manner and that her affect was animated and her mood was hypomanic with no evidence of psychosis, or suidical/homicidal ideations. The other treatment notes cited by the ALJ indicate that the Plaintiff's speech was disorganized and rambling with an odd effect, and that the Plaintiff presented with mismatched clothing and bright pink eye makeup. The ALJ then discounted these observations, stating that other treating sources for physical treatment did not note this type of behavior and "it does not appear in the records as typical behavior." (ALJ Decision 10, R. 65.) This line of reasoning is difficult to follow, and does not appear to take into account the nature of the Plaintiff's impairments.

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. *E.g., Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir.2002); *Washington v. Shalala*, 37 F.3d 1437, 1442–43 (10th Cir.1994). That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment. Ronald C. Kessler et al., "The Prevalence and Effects of Mood Disorders on Work Performance in a Nationally Representative Sample of U.S. Workers," 163 Am. J. Psychiatry 1561–68 (2006).

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Although the ALJ attempted to take more than a snapshot of the Plaintiff's condition, her explanation falls short of adequately explaining how she determined which picture provided an accurate view of the Plaintiff's limitations and her ability to work full time.

The ALJ also noted that Dr. Kohler failed to explain what effect current medication

14

would have on the Plaintiff's ability to work. Although there is evidence in the record that certain medications were working, there was also other evidence that the side effects were not tolerable to the Plaintiff, both in her treatment notes and through the testimony of someone who lived with her for the past eight years. "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ was obligated to discuss the evidence that supported the conclusion that the Plaintiff's condition was under control as well as the evidence that suggested it was not. *See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (noting that an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must consider all relevant evidence).

B.  **Hypothetical to the Vocational Expert**

The Plaintiff argues that the ALJ erroneously found work for the Plaintiff at Step 5 because she failed to incorporate all of the Plaintiff's physical and mental limitations, established by the record, into the hypothetical. The Plaintiff asserts that when the hypothetical to the VE included additional restrictions not cited by the ALJ, such as missing four days of work per month, an inability to accept supervision or criticism, and the need to get up every 45 minutes to walk around, the VE testified that no such positions existed. Additionally, the Plaintiff argues that the VE's testimony conflicted with the ALJ's RFC even without these added restrictions. Specifically, the Plaintiff argues that certain of the positions identified by the VE would require more reaching, skill, precision, and variation in duties than the Plaintiff could perform even under the ALJ's RFC.

The ALJ's hypothetical was necessarily impacted by her findings regarding the Plaintiff's limitations. To the extent those limitations are revised on remand, so too should the hypothetical be revised. The ALJ will also have another opportunity to ensure that any jobs the VE identifies are consistent with the RFC.

## CONCLUSION

For the reasons stated above, the Court VACATES and REMANDS the decision of the Commissioner for further proceedings. The Court ADOPTS the background section of the Report and Recommendation [ECF No. 21], pages 1 through 32 inclusive, and REJECTS and MODIFIES the conclusions of law as set forth in this Opinion and Order. The Plaintiff's Objections to the Magistrate Judge Report and Recommendation [ECF No. 22] is terminated as a pending motion.

SO ORDERED on July 24, 2013.

                                                     s/ Theresa L. Springmann  
                                                   THERESA L. SPRINGMANN  
                                                   UNITED STATES DISTRICT COURT  
                                                   FORT WAYNE DIVISION